**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION, | |
| *Plaintiff,* | |
| v. | Civil Action No. <u>1:25-cv-00928-</u>UNA |
| TEVA PHARMACEUTICALS, INC., TEVA PHARMACEUTICALS USA, INC., and TEVA PHARMACEUTICAL INDUSTRIES LTD., | |
| *Defendants.* | |

## <u>COMPLAINT</u>

1.      Plaintiff Novartis Pharmaceuticals Corporation ("Novartis" or "Plaintiff") files this Complaint for patent infringement against Teva Pharmaceuticals, Inc., Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. (collectively, "Teva"), and by its attorneys, hereby alleges as follows:

2.      This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, and for a declaratory judgment of patent infringement under 28 U.S.C. §§ 2201 and 2202, that arises out of Teva's submission of an Abbreviated New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import a generic version of Mekinist® (trametinib dimethyl sulfoxide) tablets, 0.5 mg and 2 mg, prior to the expiration of U.S. Patent No. 8,580,304 ("the '304 patent"); U.S. Patent No. 9,155,706 ("the '706 patent"); U.S. Patent No.

1

9,271,941 ("the '941 patent"); and 9,399,021 ("the '021 patent"). These patents are referred to collectively herein as the "Patents-in-Suit."

3.      Teva notified Novartis by letter dated June 9, 2025 ("Teva's Notice Letter") that it had submitted to the FDA ANDA No. 220040 ("Teva's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of trametinib tablets, 0.5 mg and 2 mg, ("Teva's ANDA Product") prior to the expiration of the Patents-in-Suit.

## PARTIES

4.      Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

5.      Plaintiff Novartis Pharmaceuticals Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 59 Route 10, East Hanover, New Jersey 07936.  Novartis Pharmaceuticals Corporation is the holder of New Drug Application ("NDA") No. 204114 for the manufacture and sale of trametinib dimethyl sulfoxide tablets, 0.5 mg and 2 mg, which has been approved by the FDA.

6.      On information and belief, Teva Pharmaceuticals, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054.

7.      On information and belief, Teva Pharmaceuticals USA, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054.

8.      On information and belief, Teva Pharmaceutical Industries Ltd. is a corporation organized and existing under the laws of Israel, having a principal place of business at 124 Dvora HaNevi'a St. Tel Aviv 6944020, Israel.

2

9.      On information and belief, Defendant Teva Pharmaceuticals, Inc. is a wholly owned subsidiary of Teva Pharmaceutical Industries Ltd., acts at the direction, and for the benefit, of Teva Pharmaceutical Industries Ltd., and is controlled and/or dominated by Teva Pharmaceutical Industries Ltd.

10.     On information and belief, Defendant Teva Pharmaceuticals USA, Inc. is a wholly owned subsidiary of Teva Pharmaceutical Industries Ltd., acts at the direction, and for the benefit, of Teva Pharmaceutical Industries Ltd., and is controlled and/or dominated by Teva Pharmaceutical Industries Ltd.

11.     On information and belief, Teva is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market.

## JURISDICTION

12.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

13.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

14.     This Court has personal jurisdiction over Defendant Teva Pharmaceuticals, Inc.

15.     Teva Pharmaceuticals, Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Teva Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware located at 251 Little Falls Drive, Wilmington, Delaware 19808.  It therefore has consented to general jurisdiction in Delaware.  In addition, on information and belief, Teva Pharmaceuticals,

ME1\55032298.v1

Inc., acting in concert with Teva Pharmaceuticals USA, Inc. and/or Teva Pharmaceutical Industries Ltd., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Novartis's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

16.     On information and belief, Teva Pharmaceuticals, Inc. knows and intends that following any approval of Teva's ANDA No. 220040, Teva Pharmaceuticals, Inc. will, in concert with Teva Pharmaceuticals USA, Inc. and/or Teva Pharmaceutical Industries Ltd., manufacture and import into the United States Teva's ANDA Product and directly or indirectly market, sell, and distribute Teva's ANDA Product throughout the United States, including in Delaware.  On information and belief, following any FDA approval of ANDA No. 220040, Teva Pharmaceuticals, Inc. knows and intends that Teva's ANDA Product will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

17.     Teva Pharmaceuticals, Inc. has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

18.     On information and belief, Teva Pharmaceuticals, Inc., with knowledge of the Hatch-Waxman Act process, directed Teva's Notice Letter to Novartis Pharmaceuticals Corporation, an entity incorporated in Delaware, and alleged in Teva's Notice Letter that each claim of the Patents-in-Suit is invalid and/or not infringed.  On information and belief, Teva Pharmaceuticals, Inc. knowingly and deliberately challenged Novartis's patent rights, and knew

4

when it did so that it was triggering the provisions of the Hatch-Waxman Act for Novartis to bring an action for patent infringement.

19.    Because Novartis is incorporated in Delaware, Novartis suffers injury and consequences from Teva Pharmaceuticals, Inc.'s filing of Teva's ANDA, challenging Novartis's patent rights in Delaware.  On information and belief, Teva Pharmaceuticals, Inc. knew that it was deliberately challenging the patent rights of a Delaware entity.  Teva Pharmaceuticals, Inc. has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Teva's Notice Letter to Novartis Pharmaceuticals Corporation, a Delaware corporation, that it would be sued in Delaware for patent infringement.

20.    On information and belief, if Teva's ANDA is approved, Teva Pharmaceuticals, Inc. will directly or indirectly market, sell, and/or distribute Teva's ANDA Product within the United States, including in Delaware, consistent with Teva Pharmaceuticals, Inc.'s practices for the marketing and distribution of other generic pharmaceutical products.  On information and belief, Teva Pharmaceuticals, Inc. regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.  On information and belief, Teva Pharmaceuticals, Inc.'s generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  On information and belief, Teva's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware.  Each of these activities would have a substantial effect within Delaware and would constitute infringement of the claims of the Patents-in-Suit in the event that Teva's ANDA Product is approved before the patents expire.

21.     On information and belief, Teva Pharmaceuticals, Inc. derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Teva Pharmaceuticals, Inc. and/or for which Teva Pharmaceuticals, Inc. is the named applicant on approved ANDAs.  On information and belief, various products for which Teva Pharmaceuticals, Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

22.     This Court has personal jurisdiction over Defendant Teva Pharmaceuticals USA, Inc.

23.     Teva Pharmaceuticals USA, Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Teva Pharmaceuticals USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware located at 251 Little Falls Drive, Wilmington, Delaware 19808.  It therefore has consented to general jurisdiction in Delaware.  In addition, on information and belief, Teva Pharmaceuticals USA, Inc., acting in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceutical Industries Ltd., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Novartis's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

24.     On information and belief, Teva Pharmaceuticals USA, Inc. knows and intends that following any approval of Teva's ANDA No. 220040, Teva Pharmaceuticals USA, Inc. will, in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceutical Industries Ltd., manufacture

6

and import into the United States Teva's ANDA Product and directly or indirectly market, sell, and distribute Teva's ANDA Product throughout the United States, including in Delaware. On information and belief, following any FDA approval of ANDA No. 220040, Teva Pharmaceuticals USA, Inc. knows and intends that Teva's ANDA Product will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

25.    Teva Pharmaceuticals USA, Inc. has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

26.    On information and belief, Teva Pharmaceuticals USA, Inc., with knowledge of the Hatch-Waxman Act process, directed Teva's Notice Letter to Novartis Pharmaceuticals Corporation, an entity incorporated in Delaware, and alleged in Teva's Notice Letter that each claim of the Patents-in-Suit is invalid and/or not infringed. On information and belief, Teva Pharmaceuticals USA, Inc. knowingly and deliberately challenged Novartis's patent rights, and knew when it did so that it was triggering the provisions of the Hatch-Waxman Act for Novartis to bring an action for patent infringement.

27.    Because Novartis is incorporated in Delaware, Novartis suffers injury and consequences from Teva Pharmaceuticals USA, Inc.'s filing of Teva's ANDA, challenging Novartis's patent rights in Delaware. On information and belief, Teva Pharmaceuticals USA, Inc. knew that it was deliberately challenging the patent rights of a Delaware entity. Teva Pharmaceuticals USA, Inc. has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Teva's Notice

ME1\55032298.v1

Letter to Novartis Pharmaceuticals Corporation, a Delaware corporation, that it would be sued in Delaware for patent infringement.

28.    On information and belief, if Teva's ANDA is approved, Teva Pharmaceuticals USA, Inc. will directly or indirectly market, sell, and/or distribute Teva's ANDA Product within the United States, including in Delaware, consistent with Teva Pharmaceuticals USA, Inc.'s practices for the marketing and distribution of other generic pharmaceutical products.  On information and belief, Teva Pharmaceuticals USA, Inc. regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.  On information and belief, Teva Pharmaceuticals USA, Inc.'s generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  On information and belief, Teva's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of the claims of the Patents-in-Suit in the event that Teva's ANDA Product is approved before the patents expire.

29.    On information and belief, Teva Pharmaceuticals USA, Inc. derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Teva Pharmaceuticals USA, Inc. and/or for which Teva Pharmaceuticals USA, Inc. is the named applicant on approved ANDAs.  On information and belief, various products for which Teva Pharmaceuticals USA, Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

8

30.     This Court has personal jurisdiction over Defendant Teva Pharmaceutical Industries Ltd.

31.     Teva Pharmaceutical Industries Ltd. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, Teva Pharmaceutical Industries Ltd., acting in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceuticals USA, Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Novartis's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

32.     On information and belief, Teva Pharmaceutical Industries Ltd. knows and intends that following any approval of Teva's ANDA No. 220040, Teva Pharmaceutical Industries Ltd. will, in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceuticals USA, Inc., manufacture and import into the United States Teva's ANDA Product and directly or indirectly market, sell, and distribute Teva's ANDA Product throughout the United States, including in Delaware.  On information and belief, following any FDA approval of ANDA No. 220040, Teva Pharmaceutical Industries Ltd. knows and intends that Teva's ANDA Product will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

33.     Teva Pharmaceutical Industries Ltd. has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C.

ME1\55032298.v1

§ 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

34.     On information and belief, Teva Pharmaceutical Industries Ltd., with knowledge of the Hatch-Waxman Act process and in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceuticals USA, Inc., directed Teva's Notice Letter to Novartis, an entity incorporated in Delaware, and alleged in Teva's Notice Letter that each claim of the Patents-in-Suit is invalid and/or not infringed.  On information and belief, Teva Pharmaceutical Industries Ltd. knowingly and deliberately challenged Novartis's patent rights and knew when it did so that it was triggering the provisions of the Hatch-Waxman Act for Novartis to bring an action for patent infringement.

35.     Because Novartis is incorporated in Delaware, Novartis suffers injury and consequences from Teva Pharmaceutical Industries Ltd.'s filing of Teva's ANDA, challenging Novartis's patent rights in Delaware.  On information and belief, Teva Pharmaceutical Industries Ltd. knew that it was deliberately challenging the patent rights of a Delaware entity.  Teva Pharmaceutical Industries Ltd. has been a litigant in connection with at least one other infringement action under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Teva's Notice Letter to Novartis, a Delaware corporation, that it would be sued in Delaware for patent infringement.

36.     On information and belief, if Teva's ANDA is approved, Teva Pharmaceutical Industries Ltd. will directly or indirectly market, sell, and/or distribute Teva's ANDA Product within the United States, including in Delaware, consistent with Teva Pharmaceutical Industries Ltd.'s practices for the marketing and distribution of other generic pharmaceutical products.  On information and belief, Teva Pharmaceutical Industries Ltd., including in concert with Teva Pharmaceuticals, Inc. and/or Teva Pharmaceuticals USA, Inc., regularly does business in

10

Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. On information and belief, Teva Pharmaceutical Industries Ltd.'s generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Teva's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of the claims of the Patents-in-Suit in the event that Teva's ANDA Product is approved before the patents expire.

37.    Alternatively, if Teva Pharmaceutical Industries Ltd.'s connections with Delaware, including its connections with Teva Pharmaceuticals, Inc. and Teva Pharmaceuticals USA, Inc., are found to be insufficient to confer personal jurisdiction, then upon information and belief, Teva Pharmaceutical Industries Ltd. is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction over Teva Pharmaceutical Industries Ltd. in Delaware is consistent with the United States Constitution and laws. *See* Fed. R. Civ. P. 4(k)(2).

38.    In addition, this Court has personal jurisdiction over Teva because Teva Pharmaceuticals, Inc., Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have purposefully availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court. *See, e.g.*, Teva's Answer at ¶¶ 20–21, *Amicus Therapeutics US, LLC v. Aurobindo Pharma Ltd. et al.*, C.A. No. 22-1461 (D. Del.) (stating Teva Pharmaceuticals, Inc., Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. did not contest personal jurisdiction for

11

purposes of that action); Teva's Answer at ¶¶ 25, *Amicus Therapeutics US, LLC et al. v. Teva Pharms. USA, Inc. et al.*, C.A. No. 22-696 (D. Del.) (stating Teva Pharmaceuticals, Inc. and Teva Pharmaceuticals USA, Inc. did not contest personal jurisdiction for purposes of that action); Teva's Answer at ¶ 22, *Pfizer Inc. et al. v. Teva Pharms., Inc. et al.*, C.A. No. 24-627 (D. Del.) (stating Teva Pharmaceuticals, Inc. did not contest personal jurisdiction for purposes of that action); Teva's Answer at ¶¶ 11–13, *Azurity Pharms., Inc. et al. v. Teva Pharms., Inc. et al.*, C.A. No. 23-1080 (D. Del.) (stating Teva Pharmaceuticals, Inc. did not contest personal jurisdiction for purposes of that action); Teva's Answer at ¶ 10, *Celgene Corp. et al. v. Teva Pharms. Inc.*, C.A. No. 23-1008 (D. Del.) (stating Teva Pharmaceuticals, Inc. did not contest personal jurisdiction for purposes of that action); Teva's Answer at ¶ 6, *Array Biopharma Inc. v. Teva Pharms., Inc.*, C.A. No. 23-625 (D. Del.) (stating Teva Pharmaceuticals, Inc. did not contest personal jurisdiction for purposes of that action).

## <u>VENUE</u>

39.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

40.     Venue is proper in this district as to Teva Pharmaceuticals, Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Teva Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware.

41.     Venue is proper in this district as to Teva Pharmaceuticals USA, Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Teva Pharmaceuticals USA, Inc. is a corporation organized and existing under the laws of the State of Delaware.

42.     Venue is proper in this district for Teva Pharmaceutical Industries Ltd. pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Teva Pharmaceutical Industries Ltd. is a

ME1\55032298.v1

corporation organized and existing under the laws of Israel and is subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

43.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

44.    Mekinist®, which contains trametinib dimethyl sulfoxide, is an anticancer medication indicated for treatment of certain types of melanoma.

45.    On information and belief, Teva's ANDA Product is a generic version of Novartis's Mekinist®.

46.    On information and belief, Teva's ANDA Product is not publicly available, nor is ANDA No. 220040 accessible to the public.

## COUNT I – INFRINGEMENT OF THE '304 PATENT

47.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

48.    The '304 patent, entitled "Pharmaceutical Composition" (attached as Exhibit A), was duly and legally issued on November 12, 2013.

49.    Novartis Pharmaceuticals Corporation is the owner and assignee of the '304 patent.

50.    The '304 patent claims, *inter alia*, pharmaceutical tablets comprising trametinib dimethyl sulfoxide solvate, wherein the tablet contains from about 25% to about 89% by weight of one or more excipients, the excipients are substantially free of water, the amount of unsolvated drug does not exceed about 20%, and/or at least 50% of the drug particles have a particle size of 30 micron or less.

51.    Mekinist® is covered by one or more claims of the '304 patent, including claims 1 and 8 of the '304 patent, and the '304 patent has been listed in connection with Mekinist® in the FDA's Orange Book.

13

52.     In Teva's Notice Letter, Teva notified Novartis of the submission of Teva's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product prior to the expiration of the '304 patent.

53.     In Teva's Notice Letter, Teva also notified Novartis that, as part of its ANDA, Teva had filed certifications of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '304 patent.  On information and belief, Teva submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '304 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product.

54.     On information and belief, Teva's ANDA Product is covered by at least claims 1 and 8 of the '304 patent.

55.     On information and belief, Teva's ANDA Product is a pharmaceutical tablet that contains trametinib dimethyl sulfoxide solvate.

56.     On information and belief, Teva's ANDA Product contains from about 25% to about 89% by weight of one or more excipients that are substantially free of water.

57.     On information and belief, the amount of unsolvated drug in Teva's ANDA Product does not exceed about 20%.

58.     On information and belief, at least 50% of the drug particles in Teva's ANDA Product have a particle size of 30 micron or less.

59.     On information and belief, Teva's submission of Teva's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or

ME1\55032298.v1

importation of Teva's ANDA Product before the expiration of the '304 patent was an act of infringement of one or more claims of the '304 patent under 35 U.S.C. § 271(e)(2)(A).

60.    On information and belief, Teva will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Teva's ANDA Product immediately and imminently upon approval of its ANDA.

61.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '304 patent, including, *inter alia*, claims 1 and 8 of the '304 patent.

62.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '304 patent, including, *inter alia,* claims 1 and 8 of the '304 patent.

63.    On information and belief, Teva plans and intends to, and will, actively induce infringement of the '304 patent when Teva's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.  Teva's activities will be done with knowledge of the '304 patent and specific intent to infringe that patent.

64.    Notwithstanding Teva's knowledge of the claims of the '304 patent, Teva has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Teva's ANDA Product with its product labeling following FDA approval of Teva's ANDA prior to the expiration of the '304 patent.

15

65. The foregoing actions by Teva constitute and/or will constitute infringement of one or more claims of the '304 patent and active inducement of infringement of one or more claims of the '304 patent.

66. Novartis will be substantially and irreparably damaged by infringement of the claims of the '304 patent.

67. Unless Teva is enjoined from infringing and actively inducing infringement of the claims of the '304 patent, Novartis will suffer irreparable injury. Novartis has no adequate remedy at law.

## COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '304 PATENT

68. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

69. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Novartis on the one hand and Teva on the other regarding Teva's infringement and active inducement of infringement by others of one or more claims of the '304 patent.

70. The Court should declare that the commercial manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product with its proposed labeling, or any other Teva drug product that is covered by or whose use is covered by the '304 patent, will infringe and induce the infringement by others of the '304 patent.

## COUNT III – INFRINGEMENT OF THE '706 PATENT

71. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

72. The '706 patent, entitled "Pharmaceutical Composition" (attached as Exhibit B), was duly and legally issued on October 13, 2015.

73. Novartis Pharmaceuticals Corporation is the owner and assignee of the '706 patent.

16

74.    The '706 patent claims, *inter alia*, pharmaceutical tablets comprising trametinib dimethyl sulfoxide solvate, wherein at least 50% of drug particles have a particle size of 30 microns or less, and/or the drug particles are micronized.

75.    Mekinist® is covered by one or more claims of the '706 patent, including claims 1 and 8 of the '706 patent, and the '706 patent has been listed in connection with Mekinist® in the FDA's Orange Book.

76.    In Teva's Notice Letter, Teva notified Novartis of the submission of Teva's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product prior to the expiration of the '706 patent.

77.    In Teva's Notice Letter, Teva also notified Novartis that, as part of its ANDA, Teva had filed certifications of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '706 patent.  On information and belief, Teva submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '706 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product.

78.    On information and belief, Teva's ANDA Product is covered by at least claims 1 and 8 of the '706 patent.

79.    On information and belief, Teva's ANDA Product is a pharmaceutical tablet that contains trametinib dimethyl sulfoxide solvate.

80.    On information and belief, at least 50% of the drug particles in Teva's ANDA Product have a particle size of 30 microns or less.

81.     On information and belief, the drug particles are micronized in Teva's ANDA Product.

82.     On information and belief, Teva's submission of Teva's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product before the expiration of the '706 patent was an act of infringement of one or more claims of the '706 patent under 35 U.S.C. § 271(e)(2)(A).

83.     On information and belief, Teva will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Teva's ANDA Product immediately and imminently upon approval of its ANDA.

84.     On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '706 patent, including, *inter alia*, claims 1 and 8 of the '706 patent.

85.     On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '706 patent, including, *inter alia,* claims 1 and 8 of the '706 patent.

86.     On information and belief, Teva plans and intends to, and will, actively induce infringement of the '706 patent when Teva's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.  Teva's activities will be done with knowledge of the '706 patent and specific intent to infringe that patent.

87.     Notwithstanding Teva's knowledge of the claims of the '706 patent, Teva has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Teva's

ANDA Product with its product labeling following FDA approval of Teva's ANDA prior to the expiration of the '706 patent.

88.     The foregoing actions by Teva constitute and/or will constitute infringement of one or more claims of the '706 patent and active inducement of infringement of one or more claims of the '706 patent.

89.     Novartis will be substantially and irreparably damaged by infringement of the claims of the '706 patent.

90.     Unless Teva is enjoined from infringing and actively inducing infringement of the claims of the '706 patent, Novartis will suffer irreparable injury.  Novartis has no adequate remedy at law.

## COUNT IV – DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '706 PATENT

91.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

92.     The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Novartis on the one hand and Teva on the other regarding Teva's infringement and active inducement of infringement by others of one or more claims of the '706 patent.

93.     The Court should declare that the commercial manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product with its proposed labeling, or any other Teva drug product that is covered by or whose use is covered by the '706 patent, will infringe and induce the infringement by others of the '706 patent.

## COUNT V – INFRINGEMENT OF THE '941 PATENT

94.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

ME1\55032298.v1

95.     The '941 patent, entitled "Pharmaceutical Composition" (attached as Exhibit C), was duly and legally issued on March 1, 2016.

96.     Novartis Pharmaceuticals Corporation is the owner and assignee of the '941 patent.

97.     The '941 patent claims, *inter alia,* pharmaceutical tablets comprising trametinib dimethyl sulfoxide solvate, wherein the tablets contain from about 25% to about 89% by weight of one or more excipients and the excipients are substantially free of water, and/or at least 50% of the drug particles have a particle size of 30 micron or less.

98.     Mekinist® is covered by one or more claims of the '941 patent, including claims 1 and 8 of the '941 patent, and the '941 patent has been listed in connection with Mekinist® in the FDA's Orange Book.

99.     In Teva's Notice Letter, Teva notified Novartis of the submission of Teva's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product prior to the expiration of the '941 patent.

100.    In Teva's Notice Letter, Teva also notified Novartis that, as part of its ANDA, Teva had filed certifications of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '941 patent.  On information and belief, Teva submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '941 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product.

101.    On information and belief, Teva's ANDA Product is covered by at least claims 1 and 8 of the '941 patent.

102.    On information and belief, Teva's ANDA Product is a pharmaceutical tablet that contains trametinib dimethyl sulfoxide solvate.

103.    On information and belief, Teva's ANDA Product contains from about 25% to about 89% by weight of one or more excipients that are substantially free of water.

104.    On information and belief, at least 50% of the drug particles in Teva's ANDA Product have a particle size of 30 micron or less.

105.    On information and belief, Teva's submission of Teva's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product before the expiration of the '941 patent was an act of infringement of one or more claims of the '941 patent under 35 U.S.C. § 271(e)(2)(A).

106.    On information and belief, Teva will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Teva's ANDA Product immediately and imminently upon approval of its ANDA.

107.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '941 patent, including, *inter alia*, claims 1 and 8 of the '941 patent.

108.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '941 patent, including, *inter alia,* claims 1 and 8 of the '941 patent.

109.    On information and belief, Teva plans and intends to, and will, actively induce infringement of the '941 patent when Teva's ANDA is approved, and plans and intends to, and

will, do so immediately and imminently upon approval.  Teva's activities will be done with knowledge of the '941 patent and specific intent to infringe that patent.

110.    Notwithstanding Teva's knowledge of the claims of the '941 patent, Teva has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Teva's ANDA Product with its product labeling following FDA approval of Teva's ANDA prior to the expiration of the '941 patent.

111.    The foregoing actions by Teva constitute and/or will constitute infringement of one or more claims of the '941 patent and active inducement of infringement of one or more claims of the '941 patent.

112.    Novartis will be substantially and irreparably damaged by infringement of the claims of the '941 patent.

113.    Unless Teva is enjoined from infringing and actively inducing infringement of the claims of the '941 patent, Novartis will suffer irreparable injury.  Novartis has no adequate remedy at law.

## COUNT VI – DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '941 PATENT

114.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

115.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Novartis on the one hand and Teva on the other regarding Teva's infringement and active inducement of infringement by others of one or more claims of the '941 patent.

116.    The Court should declare that the commercial manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product with its proposed labeling, or any other Teva drug

22

product that is covered by or whose use is covered by the '941 patent, will infringe and induce the infringement by others of the '941 patent.

## COUNT VII – INFRINGEMENT OF THE '021 PATENT

117.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

118.    The '021 patent, entitled "Pharmaceutical Composition" (attached as Exhibit D), was duly and legally issued on July 26, 2016.

119.    Novartis Pharmaceuticals Corporation is the owner and assignee of the '021 patent.

120.    The '021 patent claims, *inter alia*, pharmaceutical tablets comprising trametinib dimethyl sulfoxide solvate, wherein drug particles are micronized, and/or at least 50% of the drug particles have a particle size of 30 micron or less.

121.    Mekinist® is covered by one or more claims of the '021 patent, including claims 1 and 8 of the '021 patent, and the '021 patent has been listed in connection with Mekinist® in the FDA's Orange Book.

122.    In Teva's Notice Letter, Teva notified Novartis of the submission of Teva's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product prior to the expiration of the '021 patent.

123.    In Teva's Notice Letter, Teva also notified Novartis that, as part of its ANDA, Teva had filed certifications of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '021 patent.  On information and belief, Teva submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '021 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product.

124.    On information and belief, Teva's ANDA Product is covered by at least claims 1 and 8 of the '021 patent.

125.    On information and belief, Teva's ANDA Product is a pharmaceutical tablet that contains trametinib dimethyl sulfoxide solvate.

126.    On information and belief, the drug particles in Teva's ANDA Product are micronized.

127.    On information and belief, at least 50% of the drug particles in Teva's ANDA Product have a particle size of 30 micron or less.

128.    On information and belief, Teva's submission of Teva's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Teva's ANDA Product before the expiration of the '021 patent was an act of infringement of one or more claims of the '021 patent under 35 U.S.C. § 271(e)(2)(A).

129.    On information and belief, Teva will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Teva's ANDA Product immediately and imminently upon approval of its ANDA.

130.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '021 patent, including, *inter alia*, claims 1 and 8 of the '021 patent.

131.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '021 patent, including, *inter alia,* claims 1 and 8 of the '021 patent.

ME1\55032298.v1

132. On information and belief, Teva plans and intends to, and will, actively induce infringement of the '021 patent when Teva's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Teva's activities will be done with knowledge of the '021 patent and specific intent to infringe that patent.

133. Notwithstanding Teva's knowledge of the claims of the '021 patent, Teva has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Teva's ANDA Product with its product labeling following FDA approval of Teva's ANDA prior to the expiration of the '021 patent.

134. The foregoing actions by Teva constitute and/or will constitute infringement of one or more claims of the '021 patent and active inducement of infringement of one or more claims of the '021 patent.

135. Novartis will be substantially and irreparably damaged by infringement of the claims of the '021 patent.

136. Unless Teva is enjoined from infringing and actively inducing infringement of the claims of the '021 patent, Novartis will suffer irreparable injury. Novartis has no adequate remedy at law.

## COUNT VIII – DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '021 PATENT

137. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

138. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Novartis on the one hand and Teva on the other regarding Teva's infringement and active inducement of infringement by others of one or more claims of the '021 patent.

139.     The Court should declare that the commercial manufacture, use, sale, offer for sale, and/or importation of Teva's ANDA Product with its proposed labeling, or any other Teva drug product that is covered by or whose use is covered by the '021 patent, will infringe and induce the infringement by others of the '021 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a)      A judgment that one or more claims of each of the Patents-in-Suit has been infringed under 35 U.S.C. § 271(e)(2) by Teva's submission to the FDA of Teva's ANDA;

b)      A judgment ordering that the effective date of any FDA approval of Teva's ANDA be not earlier than the latest of the expiration dates of the Patents-in-Suit, inclusive of any extension(s) and additional period(s) of exclusivity;

c)      A permanent injunction enjoining Teva, and all persons acting in concert with Teva, from the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Teva's ANDA Product, or any other drug product covered by or whose use is covered by one or more claims of one or more of the Patents-in-Suit, prior to the expiration of the Patents-in-Suit, inclusive of any extension(s) and additional period(s) of exclusivity;

d)      A judgment declaring that the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Teva's ANDA Product, or any other drug product which is covered by or whose use is covered by one or more claims of one or more of the Patents-in-Suit, prior to the expiration of the Patents-in-Suit, will infringe and/or induce the infringement of the patents;

e)      A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

f)      Novartis's costs and expenses in this action; and

g)      Such further and other relief as the Court may deem just and proper.

Dated:  July 24, 2025

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver

OF COUNSEL:                                    Daniel M. Silver (#4758)
                                               Alexandra M. Joyce (#6423)
Jessamyn S. Berniker                           Renaissance Centre
Christopher J. Mandernach                       405 N. King Street, 8th Floor
Adam Pan                                        Wilmington, DE 19801
Robert F. Hartsmith                            T: (302) 984-6300
WILLIAMS & CONNOLLY LLP                         dsilver@mccarter.com
680 Maine Avenue S.W.,                          ajoyce@mccarter.com
Washington, DC 20024
T: (202) 434-5000                              *Attorneys for Plaintiff Novartis*
F: (202) 434-5029                              *Pharmaceuticals Corporation*
jberniker@wc.com
cmandernach@wc.com
apan@wc.com
rhartsmith@wc.com

ME1\55032298.v1